UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                           :    12 Civ. 3580 (PAE) (JCF)

KENNETH IVEY, DWAIN LANCE WILLIAMS,    :    12 Civ. 3908 (PAE) (JCF)
DAREN STATON, ERNEST LANGSTON, MICHAEL  :    12 Civ. 4170 (PAE) (JCF)
STRAKER, BRANAN BOSTON, and HOWARD      :    12 Civ. 4961 (PAE) (JCF)
POWELL,                                                           :    12 Civ. 5155 (PAE) (JCF)
                                                                         :    12 Civ. 5668 (PAE) (JCF)
                             Plaintiffs,      :    12 Civ. 5695 (PAE) (JCF)
                -v-                                  :
                                                    :
                                                    :    <u>OPINION & ORDER</u>
CITY OF NEW YORK et al.,                      :
                                                    :
                          Defendants.     :
                                                    :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Before the Court is the August 20, 2013 Report and Recommendation of Magistrate Judge James C. Francis IV, *see* No. 12 Civ. 3580 (Dkt. 51) (the "Report"), addressing the above-captioned cases, which have been consolidated before this Court. The Report recommends that the Amended Complaints of plaintiffs Ivey (No. 12 Civ. 3580), Staton (No. 12 Civ. 4170), Langston (No. 12 Civ. 4961), and Powell (No. 12 Civ. 5695) be dismissed with prejudice pursuant to Rule 12(b)(6). *Id.* As to the Amended Complaints of plaintiffs Williams (No. 12 Civ. 3908), Straker (No. 12 Civ. 5155), and Boston (No. 12 Civ. 5668), the Report recommends that they be dismissed without prejudice, to allow these plaintiffs "to further amend their complaints to add the appropriate defendants and to state a plausible claim of individual or municipal liability." Report at 18.

      For the reasons that follow, the Court finds the Report persuasive, and adopts it in full.

**I.     Background**

These cases are among the more than 100 civil actions filed in this District concerning the adequacy of beds at the New York City Department of Correction's Anna M. Cross Center ("AMKC") on Rikers Island. The seven *pro se* plaintiffs identified above are or were inmates housed at the AMKC. They bring virtually identical lawsuits under 42 U.S.C. § 1983, alleging that they have been provided beds that are too short, too thin, uncomfortable, or otherwise deficient. *See* Report 1–2 (summarizing claims). The original Complaints of these plaintiffs were dismissed with leave to amend. All seven plaintiffs then submitted Amended Complaints.

On May 30, 2013, defendants filed a consolidated motion to dismiss, arguing that each plaintiff had failed: (1) to state a constitutional claim; (2) to provide facts showing the personal involvement of the named defendants; and (3) to plead municipal liability. *See* No. 12 Civ. 3580, Dkt. 44–45. No plaintiff submitted an opposition to defendants' motion to dismiss. On August 20, 2013, Judge Francis issued the Report, recommending that defendants' motion to dismiss the Amended Complaints be granted in part and denied in part. Specifically Judge Francis recommended that: (1) the Amended Complaints of plaintiffs Ivey, Staton, Langston, and Powell be dismissed with prejudice; and (2) the Amended Complaints of plaintiffs Williams, Straker, and Boston be dismissed without prejudice to allow them another chance to amend. *See* Report at 18. As to the latter three plaintiffs, the Report concluded that each had plausibly pled a conditions-of-confinement claim, but that each had failed to adequately plead individual or municipal liability. *See id.* at 13–18.

The deadline for the parties to file objections to the Report was September 4, 2013. Two plaintiffs—Ivey and Langston—filed objections. *See* No. 12 Civ. 3580, Dkt. 53 ("Ivey Objections"); No. 12 Civ. 4961, Dkt. 39 ("Langston Objections"). Defendants also filed an

2

objection to Judge Francis's recommendation that the Amended Complaints of plaintiffs Williams, Straker, and Boston be dismissed without, rather than with, prejudice.  *See* No. 12 Civ. 3580, Dkt. 52 ("Defendants' Objections").

## II.   Discussion

### A.  Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *Carlson v. Dep't of Justice*, No. 10 Civ. 5149 (PAE) (KNF), 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012) (citation omitted); *see also Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

Where specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.  *See Jones v. Smith*, No. 09 Civ. 6497 (PAE) (GAY), 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases).  The Court is mindful that "*pro se* parties are generally accorded leniency when making objections."  *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023(LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citing *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)); *see also Vasquez v. Reynolds*, No. 00 Civ. 0862 (RMB) (KNF), 2002 WL 417183, at *5 (S.D.N.Y. Mar. 18, 2002) ("Where the petitioner is *pro se*, leniency is generally accorded.") (citation omitted).  Nonetheless, to trigger

*de novo* review, even a *pro se* party's objections to a Report and Recommendation must be "specific and clearly aimed at particular findings" in the magistrate judge's report. *Parlin Funds LLC v. Gilliams*, No. 11 Civ. 2534 (ALC) (MHD), 2012 WL 5258984, at *1 (S.D.N.Y. Oct. 23, 2012) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

### B. Non-Objecting Plaintiffs

Because Staton and Powell did not submit any objections to the Report, a review for clear error is appropriate. Careful review of the Report as to these two plaintiffs reveals no clear error. On the contrary, the Court agrees with the Report's conclusions that Staton and Powell have failed to state plausible constitutional claims. The Report's analysis of Staton and Powell's claims, which is incorporated by reference, is adopted without modification.

Because the Report explicitly states that "[f]ailure to file timely objections will preclude appellate review," Report at 18, Staton and Powell's failure to object operates as a waiver of appellate review. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

### C. Ivey

On September 9, 2013, Plaintiff Ivey filed objections to the Report. *See* Ivey Objections. Ivey's Amended Complaint sought to plead a conditions-of-confinement claim under the Eighth Amendment to the Constitution. Such a claim must satisfy a two-part test: (1) objectively, the deprivation suffered must deny "the minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); and (2) subjectively, the defendants must have acted with deliberate indifference, in that they knew of and disregarded an excessive risk to inmate health or safety, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citation omitted). Judge Francis

4

concluded that Ivey's Amended Complaint had pled the existence of a serious medical condition: a back condition that "warranted a doctor's recommendation for a cane and a double mattress." Report at 12. However, once Ivey was diagnosed with this serious medical condition, he was transferred to another correctional facility and treated within 24 hours. Judge Francis concluded that Ivey could not plausibly show "that the failure to provide him a non-standard bed in [the] twenty-four hour period" before he was transferred to another correctional facility "constituted deliberate indifference." Report at 12–13.

Ivey does not object to any specific findings in the Report. Instead, he reiterates his original argument—that he complained of pain in his back, and that the medication proscribed by the medical staff did not alleviate that pain. Ivey does not dispute that once he was diagnosed with a serious back condition, he was almost immediately transferred to the Watertown Correctional Facility, where he has since undergone physical therapy and an M.R.I. Ivey Objections at 4. Therefore, even on the facts as alleged by Ivey, it is not plausible that defendants have acted with "deliberate indifference"—rather, they appeared to have taken immediate steps to provide treatment. Because Ivey's objections simply reiterate his original arguments, the Court reviews the Report for clear error. *See Jones*, 2012 WL 1592190, at *1.

Careful review of Judge Francis's Report as to Ivey reveals no clear error. On the contrary, the Court agrees with the Report's conclusion that Ivey has failed to state a plausible condition-of-confinement claim. The Report's analysis of Ivey's claim, which is incorporated by reference, is adopted without modification.

### D. Langston

On September 10, 2013, plaintiff Langston also filed objections to the Report. *See* Langston Objections. Judge Francis's Report concluded that Langston's Amended Complaint

did not state a plausible condition-of-confinement claim, as it failed to allege either "a sufficiently severe health condition related to his bed" or that "he requested a special bed because of this condition and that his request was denied by an official who acted with deliberate indifference." Report at 11.

Like Ivey's, Langston's objections do not compel *de novo* review of Judge Francis's Report. Langston's first objection, although elliptical, seems to be that because his is one of only seven of the more than 100 civil actions filed on this issue that remain active, his case must have merit. Langston Objections at 1. His second objection seems to be that there is "no basis in the evidence" for concluding that prison personnel were not involved in the constitutional deprivations of which he complains. *Id.* His third objection is that transportation to his pre-trial hearings has caused him additional pain. *Id.* at 2. None of these objections address the pleading flaws identified in the Report: the failure to adequately plead that he suffered a severe health condition related to his bed, or that he was denied treatment by an official who acted with deliberate indifference. To trigger *de novo* review, even a *pro se* plaintiff must make objections that are "specific and clearly aimed at particular findings" in the Report. *Parlin Funds LLC*, 2012 WL 5258984, at *1 (citation omitted). Because Langston's objections do not address any of Judge Francis's findings or conclusions, the Court reviews the Report's dismissal of Langston's Amended Complaint for clear error. *See Jones*, 2012 WL 1592190, at *1.

Careful review of Judge Francis's Report as to Langston reveals no clear error. On the contrary, the Court agrees with the Report's conclusion that Langston has failed to state a plausible condition-of-confinement claim. The Report's analysis of Langston's claim, which is incorporated by reference, is adopted without modification.

6

### E. Defendants' Objections to the Report as to Williams, Straker, and Boston

Defendants object "solely to the portion of Judge Francis's [Report & Recommendation] which recommends dismissing the Williams, Straker, and Boston actions without prejudice." *See* Defendants' Objections at 1–2. Defendants make two principal objections.

First, defendants assert that because the Court previously dismissed the Complaint of a previous plaintiff, Harrison, in a case consolidated with these, *see Franklin v. City of New York*, No. 12 Civ. 3430 (PAE) (JCF), 2013 U.S. Dist. LEXIS 115679 (Aug. 15, 2013) (Harrison), it should also dismiss these three Amended Complaints with prejudice. *See* Defendants' Objections at 7 ("As this Court dismissed the amended pleading in *Harrison*, it should also dismiss these far less serious allegations here, with prejudice."). Harrison, however, does not assist defendants on this point. There, Judge Francis recommended that Harrison's Complaint be dismissed *without prejudice*, and Harrison did not object. The Court therefore reviewed that Report for clear error and, finding none, adopted the Report's recommendation. At the same time, Harrison had, without leave from the Court, submitted an Amended Complaint, which the Court concluded did not "address[] the problems identified in the Report." *Franklin*, 2013 U.S. Dist. LEXIS 115679, at *10. The Court therefore declined to accept Harrison's Amended Complaint, but gave him "one final opportunity to amend [his] Complaint in response to this Opinion & Order." *Id.* The Court's dismissal of Harrison's improperly filed Amended Complaint *without* prejudice has no bearing here. It does not counsel dismissing these three Amended Complaints *with* prejudice.

Defendants' second objection is more substantial—that, contrary to the conclusion reached by Judge Francis, each of the three plaintiffs has failed to plead that he required a special bed as a matter of medical necessity. The Report's decision to allow these three plaintiffs to re-

7

plead, so as to cure their pleadings' deficiencies as to individual or municipal liability, was based on its determination that these plaintiffs had adequately pled conditions-of-confinement claims. Contrary to the Report's conclusion, however, defendants argue that the Amended Complaints do not allege that "an extra mattress or different-sized bed [was] a matter of medical necessity: at most, it was an option that the plaintiffs' treating physicians ultimately elected not to pursue in favor of other valid medical treatments such as physical therapy." Defendants' Objections at 7. Because this objection challenges the Report's assessment of the adequacy of plaintiffs' pleadings, the Court will review those pleadings *de novo*.

### 1. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a Complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Twombly*, 550 U.S at 555 (internal citations omitted). Further, *pro se* pleadings must be read liberally and should be interpreted "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

### 2. Williams

Williams alleges that his bed at the AMKC caused him to suffer cellutitus and neuropathy, and that it has also exacerbated his diabetes. No. 12 Civ. 3908, Dkt. 35 ("Williams Am. Compl."). Because Williams is 6'6" tall and weighs 260 pounds, his feet hang over the end

of the bed frame while he sleeps. *Id.* at 1–3. The one-and-a-half inch protrusion at the end of the bed allegedly cuts off blood circulation to his lower legs and feet while he sleeps, which he alleges has caused a cellutitus infection and neuropathy (permanent nerve damage). *Id.* According to Williams, he currently "has no feeling in some areas and constant pain in other areas, where the cellutitus infection occurred." *Id.* at 4. Williams also alleges that he has repeatedly requested a special bed, but that officials at the prison have disregarded the risks presented to his health by denying him this reasonable accommodation. *Id.* Judge Francis's Report concluded that Williams "has pled facts sufficient to establish a plausible conditions-of-confinement claim." Report at 16. It thus recommended granting Williams leave to amend his Amended Complaint to plead the elements of municipal liability or to add the proper individual defendants.

Defendants object to this recommendation. According to defendants, Williams has failed to plead facts to establish that a different-sized bed was "a matter of medical necessity." Defendants' Objections at 7.

As discussed above, a conditions-of-confinement claim must satisfy a two-part test: (1) objectively, the deprivation suffered must deny "the minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298; and (2) subjectively, the defendants must have acted with deliberate indifference, in that they knew of and disregarded an excessive risk to inmate health or safety, *Hathaway*, 37 F.3d at 66 (citation omitted). Here, Williams' Amended Complaint has pled each element set out by this Court in *Boyd*; namely, that he: (1) suffers from a serious medical condition—diabetes and neuropathy—that requires a non-standard bed to protect against serious damage to his future health; (2) made his condition known to prison officials; (3) requested a non-standard bed to accommodate the condition; and (4) had his request denied

9

by an official who knew of and disregarded an excessive risk to his health or safety. *See Boyd v. City of New York*, No. 12 Civ. 3385 (PAE) (JCF), 2012 WL 5914007, at *4 (S.D.N.Y. Sept. 18, 2012)).

Therefore, at this stage, Williams' Amended Complaint pleads a plausible claim that prison officials acted with deliberate indifference, in that they knew of and disregarded an excessive risk to Williams' health or safety by denying him access to a longer bed that could better accommodate his height. Given Williams' diabetes, it is plausible that cutting off blood circulation to his legs would present an excessive risk to Williams' health that could be cured with a longer bed. To be sure, ordinarily, "disagreement with the type of medical care provided is insufficient to state a constitutional claim." *Whitfield v. O'Connell*, 402 F. App'x 563, 565 (2d Cir. 2010) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). But this is not a case in which a plaintiff has received adequate treatment and merely argues that the doctor could have done something different. Rather, Williams has alleged that he has suffered serious medical consequences directly attributable to the fact that he was required to sleep in a bed too short for his height, and that prison officials acted with deliberate indifference in refusing to grant him a longer bed. Taking his allegations as true, and reading his *pro se* Amended Complaint liberally, the Court concludes, after *de novo* review, that Williams has stated a condition-of-confinement claim.

The Court also agrees with the Report that Williams' Amended Complaint fails to plead the necessary facts that would go towards establishing individual or municipal liability.

Defendants, of course, do not object to this conclusion, but, for the benefit of the *pro se* plaintiffs, the Court will nonetheless briefly explain why their pleadings on this point are deficient. In general, as part of a § 1983 claim, a plaintiff must establish individual and/or municipal liability. To establish individual liability, "a plaintiff must allege sufficient facts to demonstrate the defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" *Harris v. Westchester County Dep't of Corr.*, No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 2, 2008) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)) (alteration in the original). A supervisory official's personal involvement in a § 1983 violation may be shown by evidence that: (1) the official participated directly in the violation; (2) the official, after learning of the violation, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred; and (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); *Washington v. Kelly*, No. 03 Civ. 4638 (SAS), 2004 WL 830084, at *3 (S.D.N.Y. Apr. 13, 2004).

To state a claim of municipal liability, a plaintiff "must prove that 'policies or customs that [were] sanctioned' by the municipality led to the alleged constitutional violation." *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir.2006)); *see also Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690–94 (1978). An "official policy" may be implemented through a "policy statement, ordinance, regulation, or decision" that is officially adopted and promulgated by a municipality's

policy makers. *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (citation omitted). Failing that, it is sufficient to show "that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." *Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)).

Here, the Report concluded, and the Court agrees, that Williams' Amended Complaint has failed to "establish either individual or municipal liability." Report at 17. If Williams decides to file another Amended Complaint, he must provide sufficient factual detail to show the involvement of any individually named defendant in denying him a longer bed, or allege sufficient facts to show that the constitutional deprivation he alleges was caused by a municipal defendant's "official policy" or "widespread custom."

Accordingly, Williams' Amended Complaint is dismissed without prejudice. Williams has 45 days to submit another Amended Complaint that cures the deficiency identified above.

### 3. Straker

Straker has alleged that he suffers from "major pain in [his] lower back, neck and legs" attributable to his bed at the AMKC, and that he has never "experienced such terrible back pain." No. 12 Civ. 5155, Dkt. 27 ("Straker 3d Am. Compl.") ¶ II. He also alleges that he has been diagnosed with arthritis and scoliosis while confined at the AMKC, and that the double-mattress pass he was issued for medical reasons at his previous correctional facility (the George Motchan Detention Center) was not honored upon his arrival at AMKC. *Id.* Finally, he alleges that he is 6'4" tall. *Id.* at 4. Judge Francis's Report concluded that Straker's Third Amended Complaint "states a plausible conditions-of-confinement claim." Report at 15. It recommends granting

Straker leave to submit a further amended Complaint, to enable him to attempt to adequately plead the elements of municipal liability and/or to add appropriate individual defendants.

Defendants object to this recommendation. As with Williams, defendants' primary objection is that Straker has not pled facts to establish that a non-standard bed was a matter of medical necessity, because Straker's "arthritis and scoliosis were managed by physical therapy." Defendants' Objections at 7. However, whether or not Straker is receiving physical therapy is a fact not pled in Straker's Third Amended Complaint, and thus the Court will not consider it on this motion to dismiss. *See Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (in deciding whether to dismiss a Complaint under Rule 12(b)(6), a court "is generally limited to the facts as presented within the four corners of the Complaint, to documents attached to the Complaint, or to documents incorporated within the Complaint by reference"). At this stage, Straker need only plausibly plead that he suffers from arthritis and scoliosis, that his arthritis and scoliosis necessitated a non-standard bed to protect against serious damage to his future health, that he made this condition known to prison officials, that he requested a non-standard bed, and that this request was denied. Taking his allegations as true, and reading his *pro se* Amended Complaint liberally, the Court concludes that Straker, like Williams, has stated a condition-of-confinement claim.

The Court also agrees with the Report's conclusion that Straker has failed to adequately plead either municipal or individual liability. Straker's Third Amended Complaint fails to allege any relevant custom or policy of the City of New York, or that any named defendant was personally involved in the alleged violation. The Report thus recommends, and the Court agrees, that Straker "be granted leave to amend to add allegations regarding Dr. Richards [of Corizon Health Services]." Report at 16.

Accordingly, Straker's Amended Complaint is dismissed without prejudice. He has 45 days to submit another Amended Complaint that adds facts that would show that the City of New York followed a custom or official policy that resulted in the alleged constitutional violation, and/or that Dr. Richards was personally or directly involved in the alleged constitutional violation. Again, such personal involvement may be shown by evidence that: (1) the official participated directly in the violation; (2) the official, after learning of the violation, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred; and (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

### 4. Boston

Boston has alleged that he suffers from "extreme lower back and neck pain," as well as "leg numbness." No. 12 Civ. 5688, Dkt. 21 ("Boston Am. Compl.") ¶ III. He also alleges that two doctors at the AMKC examined him and recommended an extra pillow and a double mattress to treat these issues. Boston Am. Compl. ¶ II.D. These claims are corroborated by the consultation requests and referrals attached as exhibits to his Amended Complaint. *See* Boston Am. Compl. Ex., Consultation Request with Dr. Azmat Hasan (July 14, 2012) ("Please allow [Boston] to use extra pillow for medical reasons"); Correctional Health Services Referral with Dr. Lester Lieberman (July 30, 2012) ("[E]xtra mattress for medical reason for 4 weeks"). Boston has also provided a copy of a grievance that he submitted one month after he was prescribed the extra mattress, which provides a plausible inference that a prison official, Dr. Richards of Corizon Health Services, was aware that Boston had a medical condition, that this

condition required a special bed, and that his request for such a bed was denied.  *See* Boston Am. Compl. Ex., Correctional Health Services Complaint (Aug. 30, 2012) (stating that Dr. Lieberman "determined that I needed two mattress[es] and ongoing Physical therapy" and that "Dr. Richards has yet to sign off on Dr. Lieberman['s] Referral for [an] extra mattress").  On this basis, Judge Francis's Report concluded that Boston "has adequately stated a conditions-of-confinement claim."  Report at 14.  It recommends granting Boston leave to amend his Complaint to plead the elements of municipal liability or to add appropriate individual defendants.

Defendants object to this recommendation.  Here, too, defendants argue that the plaintiff has not pled facts to establish that a non-standard bed was a matter of medical necessity, because Boston does not allege "that his pain or leg numbness *necessitated* a specific type of bed." Defendants' Objections at 7.  At the motion to dismiss stage, however, Boston need only plead a plausible case that his pain or leg numbness necessitated a non-standard bed to protect against serious damage to his future health, that he made this condition known to prison officials, that he requested a non-standard bed, and that this request was not fulfilled.  Taking his allegations as true, and reading his *pro se* Amended Complaint liberally, the Court concludes that Boston, like Williams and Straker, has stated a condition-of-confinement claim.

Again, the Court also agrees with the Report's conclusion that Boston has failed to plead either individual or municipal liability.  Boston's Amended Complaint fails to allege any custom or official policy of the City of New York, or that any named defendant was personally involved in the alleged violation.  Although Boston alleges that Dr. Richards was involved in the refusal to approve his request for a non-standard bed, Dr. Richards is not a named defendant in Boston's Amended Complaint.  The Report thus recommends, and the Court agrees, that Boston "be provided leave to amend his Complaint to add any appropriate defendant."  Report at 14.

15

Accordingly, Boston's Amended Complaint is dismissed without prejudice. He has 45 days to submit another Amended Complaint that adds facts that would show that the City of New York followed a custom or official policy that resulted in the alleged constitutional violation, or that Dr. Richards was personally or directly involved in the alleged constitutional violation. Again, such personal involvement may be shown by evidence that: (1) the official participated directly in the violation; (2) the official, after learning of the violation, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred; and (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Francis's Report in full. Accordingly:

- The Amended Complaints of plaintiffs Ivey, Staton, Langston, and Powell are dismissed with prejudice. The Clerk of Court is directed to terminate the motions pending in case numbers 12 Civ. 3580, 12 Civ. 4170, 12 Civ. 4961, 12 Civ. 5695 and to close those cases.

- The Amended Complaints of plaintiffs Williams, Straker, and Boston are dismissed with leave to file an Amended Complaint. The Clerk of Court is directed to terminate the motions pending in case numbers 12 Civ. 3908, 12 Civ. 5155, and 12 Civ. 5668, and to close those cases. Each case may be reopened without prejudice in the event that Williams, Straker, or Boston, respectively, files an Amended Complaint by January 31, 2014. Failure to file an amended complaint by that date, absent leave of the Court, will result in dismissal *with* prejudice. In their Amended Complaints, Williams, Straker, and Boston have leave to add any appropriate individual defendants, as well as any allegations that would satisfy the elements of municipal liability.

The Clerk of Court is respectfully directed to serve this Opinion and Order on each of the plaintiffs named in the caption at his address of record.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 12, 2013
       New York, New York